UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TORII BOTTOMLEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:17-cv-12107-LTS |
| BOSTON PUBLIC SCHOOLS, et al., | ) ) ) | |
| Defendants. | ) ) | |

ORDER ON MOTION TO DISMISS (DOC. NO. 21)

December 19, 2018

SOROKIN, J.

Bottomley filed suit against Boston Public Schools ("BPS") on October 27, 2017, Doc. No. 1, and amended her complaint on January 29, 2018, Doc. No. 6. The Court denied BPS' first motion to dismiss, Doc. No. 13, without prejudice. BPS has now filed a second motion to dismiss, Doc. No. 21, that addresses the claims in Bottomley's complaint to the Massachusetts Commission Against Discrimination ("MCAD complaint"), which was attached as an exhibit to her Amended Complaint. Bottomley has opposed. Doc. No. 25.

I.      BACKGROUND

Bottomley's Amended Complaint against Boston Public Schools alleges "discrimination and retaliation resulting in lack of accommodation of disability," "intentional infliction of emotional injury," and "wrongful termination of older white woman in institution receiving federal funding." Doc. No. 6 at 4. Bottomley claims that "[d]iscrimination" occurred "over a 7-year period, affecting most of the best, highly qualified, and beloved teachers," most of whom "suffered mental injuries requiring psychopharmac[e]uticals." Id. Protests from "teachers and

students" resulted in "no relief, only retaliation." Id. Because of the discrimination, students "were told to go home repeatedly, because they did not have a teacher," and were "denied proper education as grades, attendance, [and] test scores" were "falsified by admin[istrators]." Id.

Bottomley attached to her complaint as Exhibit 2 a December 20, 2017, decision by a Massachusetts Department of Industrial Accidents administrative judge in a worker's compensation claim apparently brought by Bottomley, also against Boston Public Schools. Doc. No. 6-2 at 2. In that claim, according to the administrative judge, Bottomley alleged "emotional distress resultant in a psychiatric disability as a result of stressful incidents during the course of her employment up until her exit from the workplace on February 25, 2013." Id. at 5. The administrative judge ordered Boston Public Schools to pay various workers' compensation benefits to Bottomley. Id. at 18.

Bottomley also attached to her complaint as Exhibit 4 a complaint she filed with the Massachusetts Commission Against Discrimination ("MCAD complaint"). The MCAD complaint outlines facts to support her claim that she was "discriminated against on the bases of race, age, and gender." Doc. No. 6-4 at 3. It claims violations of Mass. Gen. Laws ch. 151B, Title VII, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). Id. at 2.

According to the MCAD complaint, Bottomley began working for Boston Public Schools in 1995 and at Boston Adult Technical Academy in 2003. Id. Sheila Azores became the school's headmaster in 2006. Id. Beginning in 2008, Bottomley began complaining to various Boston Public Schools officials about Azores' conduct toward her, including disparate treatment, negative comments to Bottomley and others, and disregard for district regulations with respect to Bottomley's position as Language Acquisition Team Coordinator. Id.

The MCAD complaint alleges that these episodes culminated in February 2013 when Bottomley was dismissed from her teaching position in front of her students and placed on administrative leave. Id. The complaint alleges that Azores entered Bottomley's classroom and falsely told her students that Bottomley "did not want to teach them anymore because [she] had gotten a better job." Id. It further alleges that, after Bottomley left the classroom, Azores and two other administrators told the students that Bottomley "was not a good teacher" and "had manipulated them." Id. At some point thereafter, Bottomley's doctor informed BPS that Bottomley was "willing to take any job other than a teaching position" because of her post-traumatic stress disorder resulting from the dismissal. Id. Despite this request, and despite "a position open in the Assessment Center that [she] was qualified for," the complaint alleges, Bottomley was instead placed in a classroom teaching role in August 2013. Id. Finally, the MCAD complaint alleges that Azores had "been forcing older, white female teachers out of their positions," listing several teachers who had "also received unfairly negative evaluations and [had] left the school." Id. at 3.

II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences in favor of the plaintiff," Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993), "augment[ing] those facts with facts extractable from documentation annexed to or incorporated by reference in the complaint," Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005). This "highly deferential" standard of review "does not mean, however, that a court must

(or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992).

Because, even in an employment discrimination case, "[t]he plausibility standard governs on a motion to dismiss," Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 24 (1st Cir. 2014), "[i]t is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013). "The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint." Id. Nevertheless, the elements of the prima facie case are not "irrelevant to a plausibility determination in a discrimination suit," but rather "are part of the background against which a plausibility determination should be made." Id. "Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial—in a discrimination case, the prima facie standard—she need not plead facts sufficient to establish a prima facie case." Id.

Because Bottomley is proceeding pro se, the Court reads her complaint with "an extra degree of solicitude." Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991). "Yet even a pro se plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Adams v. Stephenson, 116 F.3d 464 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). "[I]n a civil rights action as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).

III.   DISCUSSION

Boston Public Schools claims in its second Motion to Dismiss that Bottomley "has stated no facts or claims with her Amended Complaint that would entitle her to relief, and has failed to demonstrate a sufferance of cognizable damages or an adverse action." Doc. No. 22 at 4. In support of this claim, BPS advances several legal theories.

A.   Statute of Limitations

First, BPS argues that some of Bottomley's claims are barred by the applicable statute of limitations. See Doc. No. 22 at 4; M.G.L. ch. 151B, § 5 ("Any complaint filed pursuant to this section must be so filed within 300 days after the alleged act of discrimination."). Although the continuing violation doctrine allows plaintiffs to bring some claims of discriminatory actions outside the statutory period, it is not available here because it requires that the earlier violations did not "trigger [the plaintiff's] awareness and duty to assert [her] rights." Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination, 808 N.E.2d 257, 267 (Mass. 2004). Here, Bottomley's MCAD complaint makes clear that she complained of alleged discrimination as early as 2006. These earlier complaints make it apparent that Bottomley was aware without the benefit of later events that the discrete acts before the statutory period occurred were potentially discriminatory. Accordingly, because Bottomley filed her MCAD complaint on November 1, 2013, the statute of limitations therefore precludes claims based on alleged acts of discrimination before January 7, 2013. Bottomley's claims are therefore limited to the two episodes she alleges in February and August 2013.

B.   Plausibility

Bottomley's MCAD complaint alleges that she suffered adverse employment actions on the basis of her race and sex, in violation of Mass. Gen. Laws ch. 151B, § 4, and Title VII; on the

basis of her age in violation of the ADEA; and on the basis of a disability in violation of the ADA. With respect to BPS' actions in February and August 2013, the MCAD complaint does not include specific facts that plausibly suggest that those actions were motivated by discriminatory animus because of Bottomley's race, sex, age, or disability. Simply alleging membership in a protected class and an adverse employment action is insufficient to state a claim for relief. Rather, the complaint must allege facts that make it plausible that the former caused the latter. See Alicea v. N. Am. Cent. Sch. Bus, LLC, 232 F. Supp. 3d 213, 216 (D. Mass. 2017) ("The mere fact" of an adverse employment action against a member of a protected class "does not trigger a right to conduct discovery, in hopes that evidence of a discriminatory motive may turn up."). In the absence of this causal connection, Bottomley fails to allege a plausible claim for relief.

Although Bottomley's MCAD complaint contains several allegations that could give rise to a plausible inference that Azores acted at various times based on particular animus against Bottomley, Bottomley offers no facts that suggest that Azores or another BPS official took the 2013 actions against Bottomley because of discriminatory animus based on race, sex, or age. Although Bottomley claims that Azores retaliated against her in various ways for complaining about discrimination in 2006 and between 2008 and 2011, Bottomley does not allege facts that support a plausible claim that those earlier complaints led to Azores's actions in 2013. For example, Bottomley does not claim that Azores or another BPS official made statements that suggested that their actions were based on Bottomley's age, sex, or race, nor does she claim that Azores's treatment of or actions toward teachers who did not share Bottomley's age, sex, or race differed meaningfully. Bottomley also does not offer the facts that gave rise to her 2006 belief that Azores had discriminated against her, which could be evidence of discriminatory animus

even though claims based on that discrimination would be barred by the statute of limitations. Bottomley does allege that her position was later filled by a younger female teacher of a different race, but this fact does not, on its own, give rise to an inference of discriminatory motive based on race or age, and it weighs against an inference of discriminatory motive based on sex.

Bottomley also claims that Azores had "been forcing older, white female teachers out of their positions" by giving them "unfairly negative evaluations." Doc. No. 6-4 at 3. "[T]he conclusory nature of" this allegation "disentitles [it] to the presumption of truth" that generally attaches at the motion-to-dismiss stage. Iqbal, 556 U.S. at 681. Although "the plaintiff's factual allegations are ordinarily assumed to be true in passing on the adequacy of the complaint . . . 'ordinarily' does not mean 'always': some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 557 n.5). Bottomley's allegation that the other teachers received "unfairly negative evaluations," unsupported by additional facts, falls into this category.

Finally, Bottomley's claim that she was denied an accommodation for a disability similarly fails. Azores's removal of Bottomley from her classroom plainly could not have been motivated by discrimination against Bottomley's disability, since, by her own admission, it had not arisen at that point. Although she alleges that her "doctor had informed Human Resources that due to trauma of" her removal, she "would be willing to take any job other than a teaching position," Doc. No. 6-4 at 2, this allegation is insufficient to give rise to a plausible inference that BPS was aware that Bottomley had a disability that required accommodation. It does not suggest that Bottomley or her doctor specifically informed BPS of her post-traumatic stress disorder, that BPS refused to consider such a request, or that Bottomley requested specific accommodations.

7

Bottomley's allegation that she did not receive a position "in the Assessment Center" for which she was qualified, id., does not, on its own, demonstrate that BPS refused to accommodate her disability or denied her the position because of her disability.

IV.     CONCLUSION

Bottomley's Amended Complaint fails to plausibly allege a causal connection between BPS' 2013 employment actions and Bottomley's race, sex, age, or disability. However, the First Circuit has instructed that a plaintiff's pro se status "militates in favor of a liberal reading" of a complaint, Rodi v. S. New England Sch. Of Law, 389 F.3d 5, 13 (1st Cir. 2004), and that "courts should endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects," id. at 20 (quoting Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)). A district court should "freely give leave [to] amend when justice so requires." Fed. R. Civ. P. 15(a)(2).

Accordingly, the Court grants Bottomley leave to file a second amended complaint that presents sufficient factual allegations to state a plausible claim. The second amended complaint will completely replace both earlier complaints, and must therefore be a complete pleading that complies with the basic pleading requirements of the Federal Rules of Civil Procedure. This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)), and must "at least set forth minimal facts as to who did what to whom, when, where, and why," Educadores Puertorriqueños en Acción, 367 F.3d at 68.

The second amended complaint must also include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in the complaint itself. This short and plain statement must contain the specific facts that make out Bottomley's claim and must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The statement may not

appear only in the attachments or exhibits to the second amended complaint. <u>Rather, the facts must be stated in the complaint itself.</u> The statement shall take the form of short, "numbered paragraphs, each limited as far as practicable to a single set of circumstances" and making a specific allegation supporting Bottomley's claim. Fed. R. Civ. P. 10(b).

Bottomley may submit exhibits, such as her MCAD complaint, in support of her second amended complain and refer to those exhibits in the text of the second amended complaint. However, she cannot rely on the exhibits to explain her claim. <u>The facts that Bottomley wishes the Court to consider in deciding whether her complaint states a claim must be set forth in the numbered paragraphs of the second amended complaint itself.</u>

Because Bottomley's Amended Complaint fails to state a plausible claim upon which relief can be granted, Boston Public Schools' motion to dismiss, Doc. No. 21, is ALLOWED. Bottomley is permitted to file a second amended complaint and must do so, if she wishes to, by January 18, 2019.

                                                   SO ORDERED.

                                        /s/ Leo T. Sorokin
                                        Leo T. Sorokin
                                        United States District Judge